UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-00622-GNS-CHL

CINDY CHARLES                                                                                          PLAINTIFF

V.

N.G.T. CORPORATION                                                                                 DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 38). The motion is now ripe for a decision. For the reasons outlined below, the motion is **GRANTED**.

### I. STATEMENT OF FACTS AND CLAIMS

On February 9, 2009, Plaintiff Cindy Charles ("Charles') was hired by Defendant N.G.T. Corporation ("NGT") as a sales representative; at the time of her hiring she was 49 years of age. (Compl. ¶ 7, DN 1-1; Charles Dep. 29:2-6, Sept. 27, 2017, DN 38-7). NGT, which does business as Coverall Service Company, "is a franchisor of commercial cleaning franchises throughout the United States." (Schroter Dep. 8:11-13, Sept. 28, 2017, DN 38-3; Def.'s Mem. Supp. Mot. Summ. J. 1, DN 38-1).

During the pertinent time period, NGT had seven different territories—one of which was Louisville, Kentucky. (Schroter Dep. 15:1-7). Each of those territories was overseen by a regional director and, prior to her termination, Charles served as the regional director for Louisville. (Charles Dep. 100:24-101:5; Schroter Dep. 15:7-8). Regional directors are responsible for overseeing the sales and operations staff comprised of sales representatives, franchise advisors, and administrative staff. (Schroter Dep. 29:14-19). Within the management structure of NGT, the

1

regional directors report to Michael Ward ("Ward"), Vice President of Operations, and Scott Schroter ("Schroter"), Executive Vice President, which along with many other members of management operate out of NGT's executive officer in Columbia, Maryland.[1]  (Schroter Suppl. Decl. ¶ 7, DN 44-5; Schroter Dep. 26:5-14, 27:10-28:3).  At the top of NGT's management structure are:  Tom Gilliland ("Gilliland"), President and Chief Executive Officer, who lives in Jacksonville, Florida; Dick Grummell ("Grummell"), Vice President and Chief Operating Officer, who lives in Phoenix, Arizona; and Earol Bert ("Bert"), Vice President and Chief Financial Officer, who lives in Fort Myers, Florida.  (Schroter Dep. 24:20-25:9).

The parties disagree on the events precipitating Charles' termination on April 25, 2016.  In general, NGT maintains that it terminated Charles' employment due to poor job performance, while Charles contends that it was due to age discrimination and in retaliation for reporting workplace misconduct.  At the time of her termination, Charles was 56 years of age.  (Charles Dep. 211:13-21).

Charles filed this action in Jefferson Circuit Court, Kentucky, asserting claims of age discrimination and retaliation in violation of the Kentucky Civil Rights Act ("KCRA"), KRS Chapter 344; wrongful termination; negligent retention and supervision; and intentional infliction of emotional distress ("IIED").  (Compl. ¶¶ 11-40).  NGT timely removed the case to this Court. (Notice Removal, DN 1).

---

[1] There is also a Director of Sales position, which was held by Alanna Cochran ("Cochran") during part of Charles' employment, but this position does not manage any employees.  (Schroter Dep. 29:11-14).  There are also three individuals in the accounting department of NGT and its controller. (Schroter 30:24-31:3).

## II. JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon diversity jurisdiction. *See* 28 U.S.C. § 1332.

## III. STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence establishing the existence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

In NGT's motion, it seeks summary judgment on Charles' claims. (Def.'s Mem. Supp. Mot. Dismiss 16-38). Each of the claims is addressed below.

### A. KCRA Claims

In the Complaint, Charles asserts two distinct claims under the KCRA: age discrimination and retaliation. (Compl. ¶¶ 11-24). As the Kentucky Supreme Court has noted, "[i]n 1966, the General Assembly passed the KCRA to place the Commonwealth on par with the protections guaranteed in the Federal Civil Rights Act of 1964." *Bd. of Regents of N. Ky. Univ. v. Weickgenannt*, 485 S.W.3d 299, 305 (Ky. 2016). The KCRA was subsequently amended to reflect added federal protections including claims brought under the Age Discrimination in Employment Act of 1967 ("ADEA"). *See id.* at 305 n.3 (citing KRS 344.020(1)). As this Court has explained, "[c]laims brought under the KCRA are 'analyzed in the same manner' as ADEA claims." *Winchester v. City of Hopkinsville*, 93 F. Supp. 3d 752, 762 (W.D. Ky. 2015) (citations omitted).

#### 1. *Age Discrimination*

The Court will first consider Charles' age discrimination under the KCRA. NGT contends that this claim fails as a matter of law because NGT is not subject to the KCRA because it did not have a sufficient number of employees to qualify as an employer. (Def.'s Mem. Supp. Mot. Dismiss 16, 22-24). Charles argues that there is sufficient evidence that NGT is an employer and relies upon her own declaration. (Pl.'s Resp. Def.'s Mot. Summ J. 23-25, DN 43).

As the Sixth Circuit has instructed, "[t]he numerosity threshold is an element of the plaintiff's case rather than a jurisdictional requirement." *Sanford v. Main Street Baptist Church Manor, Inc.*, 449 F. App'x 488, 491 (6th Cir. 2011) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500,

504 (2006)). Thus, the Court must determine whether NGT is an employer. If NGT is not, Charles cannot prove a prima facie case of age discrimination.

Under the KCRA, the term "employer" is defined as "a person who has eight (8) or more employees within the state in each of twenty (20) or more calendar weeks in the current or preceding calendar year and an agent of such a person . . . ." KRS 344.030(2). Charles was terminated in 2016, so the Court must determine NGT's Kentucky employees in 2015 and 2016.

Because NGT operated in multiple states, the Court also must determine which employees count for the purpose of KRS 344.030(2). As this Court has previously noted, the phrase "'[w]ithin the state' has been interpreted to mean 'physically within the state,' and not to refer to those 'located outside of Kentucky [who] interact [] with individuals inside of the state.'" *Himmelheber v. ev3, Inc.*, No. 3:07-CV-593-H, 2008 WL 360694, at *1 (W.D. Ky. Feb. 8, 2008) (second and third alterations in original) (quoting *Holmes v. Fieldstone Mortg. Co.*, No. 05-230-C, 2006 WL 1523210, at *1 (W.D. Ky. May 25, 2006)); *see also Wright v. Swigart*, No. 2016-CA-000854-MR, 2018 WL 565824, at *3 (Ky. App. Jan. 26, 2018) ("The limitation of the KCRA to employers with eight or more employees 'within the state' in the required time precludes the KCRA from having extraterritorial application. Under the terms of the statute, to be counted as an employee, physical presence 'within the state' of Kentucky is required. In [*Union Underwear Co. v. Barnhart*, 50 S.W.3d 188, 191-93 (Ky. 2001)], the Court stressed that the KCRA is a supplement to the protections afforded employees under the federal law and cautioned that the KCRA must be interpreted to 'avoid running afoul of the Commerce Clause of the United States Constitution.' The express language of the statute excludes the argument that merely because a company

conducts business in Kentucky it is subject to the provisions of the KCRA." (internal citations omitted)).

In support of its motion, NGT proffered two declarations from Sue Clausen ("Clausen"), NGT's Accounting Manager, who reviewed NGT's employee personnel files and payroll records for employees working for NGT during the relevant years. (Clausen Decl. ¶¶ 4, 19-20, DN 38-8; Clausen Suppl. Dec. ¶¶ 3-7, DN 44-1). In particular, this evidence reflects NGT's Kentucky employees during 2015 as follows:

- Between January 1 and February 22, NGT had four employees—Angela Berthold ("Berthold"), Charles, Victoria Long ("Long"), and Gary Stuber ("Stuber");

- On February 23, NGT added an employee by hiring Kendra Glotzbach ("Glotzbach");

- From February 24 to August 23, NGT had five employees—Berthold, Charles, Glotzbach, Long, and Stuber;

- On August 24, NGT added an employee by hiring Amanda Farnsley ("Farnsley");

- From August 25 to September 29, NGT had six employees—Berthold, Charles, Farnsley, Glotzbach, Long, and Stuber;

- September 30 was Stuber's last day of employment, resulting in a decrease in the number of Kentucky employees to five;

- From October 1 to December 14, NGT had five employees—Berthold, Charles, Farnsley, Glotzbach, and Long;

- December 15 was Long's last day of employment, and NGT hired Tim Pooser ("Pooser") that day; and

- From December 16 to December 31, NGT had five employees—Berthold, Charles, Farnsley, Glotzbach, and Pooser.

(Clausen Decl. ¶ 19; Clausen Suppl. Dec. ¶¶ 4-5). Thus, during 2015, NGT did not have eight or more Kentucky employees at any time.

NGT has also presented evidence relating to its Kentucky employees in 2016, which reflects as follows:

6

- Between January 1 and February 29, NGT had five employees—Berthold, Charles, Farnsley, Glotzbach, and Pooser;

- March 1 was Glotzbach's last day of employment, and NGT hired Kimberlee Conley ("Conley") that day;

- Between March 2 and March 7, NGT had five employees—Berthold, Charles, Conley, Farnsley, and Pooser;

- On March 8, NGT added an employee by hiring Sarah Bradbury ("Bradbury");

- Between March 9 and March 17, NGT had six employees—Berthold, Bradbury, Charles, Conley, Farnsley, and Pooser;

- March 18 was Berthold's last day of employment, resulting in a decrease in the number of Kentucky employees to five;

- Between March 19 and April 24, NGT had five employees—Bradbury, Charles, Conley, Farnsley, and Pooser; and

- On April 25, NGT terminated Charles' employment, resulting in a decrease in the number of Kentucky employees to 4.

(Clausen Decl. ¶ 20; Clausen Suppl. Decl. ¶¶ 6-7). Thus, during 2016, through the date of Charles' termination, NGT never had eight or more employees in Kentucky.[2]

In her response, Charles attempts to create an issue of fact by offering her recollection of NGT's Kentucky employees, naming ten individuals who worked for NGT in 2015 or 2016. She does not, however, indicate that any eight of those employees were employed simultaneously or otherwise challenge NGT's chronology of its Kentucky workforce. (Charles Aff. ¶ 13, DN 43-1). She has not offered any specific facts to contradict the dates of employment NGT has proffered for its Kentucky employees during 2015 and 2016. Instead, Charles attempts to meet her burden through her conclusory allegations that NGT qualifies as an employer under KRS 344.030(2). This is simply not enough to create a triable factual issue. *See Sandford v. Main Street Baptist Church*

---

[2] Even if the Court were to look at the remainder of 2016, NGT never had enough employees for the requisite period to meet the definition of an employer under the KCRA. (Clausen Decl. ¶ 20; Clausen Suppl. Decl. ¶¶ 6-7).

*Manor, Inc.*, No. 06-187-KSF, 2009 WL 4167938, at *3 (E.D. Ky. Nov. 20, 2009), *rev'd in part on other grounds,* 449 F. App'x 488 (6th Cir. 2011) ("Merely discrediting the defendant's evidence is insufficient to avert summary judgment." (citing *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 331 (1999))).

Likewise, Charles' attempt to rely on NGT employees working from outside of Kentucky does not defeat NGT's motion. As this Court has stated previously, the fact that NGT personnel working in other states may have interacted with NGT's Kentucky employees does not convert out-of-state employees into Kentucky employees based on the language of KRS 344.030(2). *See Himmelheber*, 2008 WL 360694, at *1. Charles asserts that her superiors at NGT, Schroter, Cochran,[3] and Ward, are "regularly within the borders of [Kentucky] [] at all times" because they monitor productivity of the Kentucky employees and "have daily, and weekly calls with the staff that put them directly in contact with the NGT Louisville office." (Charles Aff. ¶ 13). Charles concludes that "[i]n the technology age, if you are monitoring at this level the Louisville NGT's offices, with the computer systems and programs in place, then you are working within the State." (Charles Aff. ¶ 13). Despite Charles' contentions, supervising Kentucky employees from another state does not equate with being an employee "within the state" as required by KRS 344.030. *See Himmelheber*, 2008 WL 360694, at *1-2; *Holmes*, 2006 WL 1523210, at *1.

It must be noted that NGT concedes that Cochran, Schroter, and Ward each visited the Louisville three or four times per year. (Def.'s Reply Mot. Summ. J. 2 n.3, DN 44; Pl.'s Dep. 121:9-12, Sept. 27, 2017, DN 44-2; Schroter Dep. 22:19-23:9; Ward Dep. 12:3-7, 20:17-21:5, Jan. 24, 2018, DN 44-4). Even if all three were in Louisville at the same time, those limited visits

---

[3] As noted previously, Schroter testified that Cochran's did not supervise any NGT employees. (Schroter Dep. 29:11-14). While Charles disagrees as reflected in her affidavit, it is of no moment in terms of the outcome of this motion.

would come nowhere near the required 20 weeks necessary to bring NGT within the KCRA as an employer.

For these reasons, NGT does not qualify as an employer under the KCRA. The Court will dismiss her age discrimination claim.

### 2. *Retaliation Claim*

Charles' retaliation claim is also premised on the KCRA. Because she has failed to prove that NGT qualifies as an employer under the KCRA, the retaliation claim likewise fails and will be dismissed.

### B. Common Law Tort Claims

In addition to the KCRA claims, NGT seeks summary judgment on Charles' wrongful discharge, negligent retention and supervision, and IIED claims. (Def.'s Mem. Supp. Summ. J. 33-38). Each of those claims is addressed below.

### 1. *Wrongful Discharge*

As a preliminary matter, the Court must determine whether Charles may assert both KCRA and wrongful discharge claims. As this Court has explained:

> Under Kentucky law, a wrongful discharge is actionable when the discharge is contrary to a fundamental and well-defined public policy, as evidenced by a constitutional or statutory provision. However, "preemption occurs when the statutes that establish the 'well-defined public policy' violation which supports the wrongful discharge pleading are the same statutes that establish a statutory cause of action for, and structure the remedy for, violations of that public policy." Since the KCRA provides its own causes of action and remedies, the KCRA pre-empts Plaintiff's cause of action for wrongful discharge.

*Harris v. Burger King Corp.*, 993 F. Supp. 2d 677, 691 (W.D. Ky. 2014) (internal citations omitted) (citations omitted). Thus, based on the holding in *Harris*, Charles does not also have a wrongful discharge claim.

Charles contends that she has a viable wrongful discharge claim if the Court rules—as it has—that NGT does not qualify as an employer under the KCRA. (Pl.'s Resp. Def.'s Mot. Summ. J. 38-39). Charles' position is untenable. As the Kentucky Court of Appeals explained in affirming dismissal of a wrongful discharge claim asserted in a case where the defendant was not an employer under the KCRA:

> "[I]mportant to a finding of wrongful discharge is the requirement that the public policy must be defined by statute and directed at providing statutory protection to the worker in his employment situation." *Shrout v. The TFE Group*, 161 S.W.3d 351, 354 (Ky. App. 2005) (citing *Grzyb v. Evans*, 700 S.W.2d 399, 400 (Ky. 1985)). "[T]he same statute which would provide the necessary underpinning for a wrongful discharge suit where there is sufficient evidence to prove sex discrimination in employment practices also structures the remedy. The statute not only creates the public policy but preempts the field of its application."

*Releford v. T. Clay Stuart, PSC*, No. 2005-CA-000875-MR, 2006 WL 1949819, at *1 (Ky. App. July 14, 2006) (alterations in original) (citing *Gryzb*, 700 S.W.2d at 401). Thus, the KCRA preempts Charles' wrongful discharge claim.

For these reasons, Charles does not have a wrongful discharge claim against NGT. The Court will grant summary judgment on this basis.

### 2. *Negligent Retention & Supervision*

NGT contends that the common-law claims of negligence against an employer are barred by the exclusivity provision of the Kentucky Workers' Compensation Act ("KWCA"). (Def.'s Mem. Supp. Summ. J. 37-38). In relevant part, the KWCA provides:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter *shall be exclusive* and in place of all other liability of such employer to the employee , his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death.

KRS 342.690(1) (emphasis added). For the exclusivity provision to apply, the employer must have workers' compensation coverage, and there must be "an injury arising out of and in the course of employment." *Meade v. Arnold*, 643 F. Supp. 2d 913, 916 (E.D. Ky. 2009).

In this case, NGT has presented evidence that it maintained workers' compensation coverage in Kentucky for the time period relevant to this action. (Clausen Decl. Ex. A, DN 38-8). Charles has not contested that evidence. Likewise, Charles' claims clearly arise out of her employment with NGT. (Compl. ¶¶ 30-36). Thus, the KWCA applies to Charles' negligence claims.

Kentucky courts have interpreted the exclusivity provision of the KWCA to bar an employee from suing "her employer for negligent supervision or retention." *Gatlin v. Shoe Show, Inc.*, No. 3:14-CV-00446-TBR, 2014 WL 3586498, at *6 (W.D. Ky. July 21, 2014) (citation omitted); *see also Grego v. Meijer, Inc.*, 239 F. Supp. 2d 676, 683 (W.D. Ky. 2002) ("Based on the plain language of KRS 342.690(1) and the Kentucky courts' long history of interpreting the Workers' Compensation Act to prohibit tort actions grounded in negligence between an employer and employee, this Court concludes that the exclusivity provision of Kentucky's Workers' Compensation Act bars negligent supervision claims between an employer and employee."); *Estes v. Carpenter Co.*, Nos. 2003-CA-000090-MR & 2003-CA-000190-MR, 2004 WL 2633544, at *7 (Ky. App. Nov. 19, 2004) ("The circuit court correctly ruled that to the extent Estes employed any theories of liability based on negligence, for example, negligent hiring of Bullock, negligent supervision of Bullock, and a negligent failure to provide a safe workplace, Estes's avenue of relief is limited to workers' compensation by the exclusive remedy provision of KRS 342.690(1)."); *see also Henn v. Pinnacle Publ'g, LLC*, No. 12-307-KSF, 2012 WL 6096670, at *3 (E.D. Ky. Dec. 7, 2012) ("While Kentucky courts have recognized the tort of negligent hiring and retention, those

cases involved suits by third parties against an employer whose employee caused harm to someone they did not employ. Henn has cited no Kentucky cases which allow an employee to sue his own employer under a negligence theory for an alleged hostile work environment created by a coworker or supervisor. As a result, Henn's negligence claim against the defendants will be dismissed." (internal citation omitted)). Based on these principles of Kentucky law, Charles' negligence claims are barred by the exclusivity provision of the KWCA. The Court will grant summary judgment for NGT on these claims.

### 3. *IIED*

Finally, NGT seeks dismissal of Charles' IIED claim. (Def.'s Mem. Supp. Mot. Summ. J. 37). In general, IIED claims are difficult to prove. As the Kentucky Supreme Court has noted:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!".

*Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 789 (Ky. 2005), *overruled on other grounds by Toler v. Süd-Chémie, Inc.*, 458 S.W.3d 276 (Ky. 2014) (quoting Restatement (Second) of Torts § 46(1) cmt. d)).

In her response, Charles argues that it is her "contention that NGT's actions in terminating her employment were outrageous. The actions against her have included her termination, for sure, but also included Ms. Cochran's intentional and harassing behavior." (Pl.'s Rep. Def.'s Mot. Summ. J. 40). Charles provides no citation to evidence in the record to support those assertions. While Charles is the non-moving party, she must "provide concrete evidence supporting [her] claims and establishing the existence of a genuine issue of fact" to defeat NGT's motion. *Joe Hand Promotions, Inc. v. Hernandez*, No. 3:14CV-86-CRS, 2016 WL 502058, at *3 (W.D. Ky.

Feb. 8, 2016) (quoting *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989)). Nevertheless, based on the Court's review of the record, there is no evidence whatsoever of any conduct by NGT which could qualify as outrageous as defined by Kentucky courts. Accordingly, the Court will dismiss this claim.

IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 38) is **GRANTED**, and the Complaint is **DISMISSED WITH PREJUDICE**.

Greg N. Stivers, Chief Judge
United States District Court

March 21, 2019

cc: counsel of record